IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-00401-PAB-KLM

KATHERINE GILES and
ZURICH AMERICAN INSURANCE COMPANY,

      Plaintiffs,

v.

THE INFLATABLE STORE, INC.,

      Defendant.
_____

**ORDER**
_____

      Plaintiffs Katherine Giles and Zurich American Insurance Company filed this

action seeking damages for personal injuries Ms. Giles allegedly sustained as a result

of an accident during a mock sumo wrestling contest.  The matter before the Court is

plaintiffs' Motion to Preclude Testimony at Trial of Witnesses Dr. Kathey Verdeal and

Dr. Richard Hughes [Docket No. 90].  The Court's jurisdiction is premised upon diversity

of citizenship with an amount in controversy in excess of the statutory minimum under

28 U.S.C. § 1332.  For the reasons stated below, the Motion is GRANTED.

## I.  BACKGROUND

      As a result of injuries Ms. Giles allegedly sustained in a mock sumo wrestling

contest while wearing an inflatable suit, plaintiffs brought claims against five

defendants: Cheyenne Mountain Resort, LLC (owner of the premises where Ms. Giles

was injured); Benchmark Hospitality International and BMC – The Benchmark

Management Company (operators of those premises); Gravity Play Entertainment, LLC (provider of the equipment used in the sumo contest); and The Inflatable Store, Inc. ("TIS") (seller of the sumo equipment).  *See* Am. Compl. [Docket No. 5].  In July 2008, plaintiffs settled their claims against Cheyenne Mountain Resort, Benchmark Hospitality International, BMC – The Benchmark Management Company, and Gravity Play Entertainment (collectively, the "Settling Defendants").  *See* Mot. to Preclude Testimony at Trial of Witnesses Dr. Kathey Verdeal and Dr. Richard Hughes [Docket No. 90] ("Pls.' Mot.") at 1.  The settlement left TIS as the only defendant remaining in this litigation.  *See id.*

In September 2007, prior to settlement, the parties moved for an extension of numerous deadlines, including the deadline for disclosure of defendants' expert witnesses.  *See* Joint Mot. to Modify Scheduling Order [Docket No. 30].  The Court granted the motion and set defendants' expert disclosure deadline for March 11, 2008.  *See* Min. Order [Docket No. 32].  At least one of the Settling Defendants retained and timely designated Dr. Kathey Verdeal and Dr. Richard Hughes as expert witnesses on the issues of Ms. Giles' alleged alcohol use and whether that use contributed to her accident.  *See* Pls.' Mot. at 2; Def.'s Resp. to Pls.' Mot. to Preclude Testimony at Trial of Expert Witnesses Dr. Kathey Verdeal and Dr. Richard Hughes [Docket No. 91] ("Def.'s Resp.") at 1.  Importantly, these toxicology experts were not retained or timely disclosed by TIS.  *See* Pls.' Mot. at 2; Def.'s Resp. at 2.[1]

---

[1] After the deadline for expert disclosures had passed, TIS filed a "First Supplemental Disclosure of Expert Testimony" that purported to adopt the expert disclosures of the Settling Defendants, including the disclosures of Drs. Verdeal and Hughes.  *See* Pls.' Mot. at 2 n.1.

The Settling Defendants' disclosures of Drs. Verdeal and Hughes were accompanied by written reports disclosing the substance of the experts' opinions. *See* Def.'s Resp. at 1. On May 9, 2008, Dr. Verdeal was deposed. *See id.* at 3. After this deposition, and as part of their settlement with plaintiffs, the Settling Defendants agreed to withdraw the expert designations of Drs. Verdeal and Hughes. *See* Pls.' Mot. at 2.

The parties included the following provision in their settlement agreement, effective July 3, 2008:

> 9. <u>EXPERT WITNESSES</u>.
>
> The Settling Defendants agree to withdraw its [sic] designations of expert witnesses Dr. Richard Hughes and Dr. Kathey Verdeal. The Settling Defendants agree to authorize and encourage all other liability experts disclosed on their behalf to act as expert consultants for Plaintiffs and/or expert witnesses to be called by Plaintiffs in this Litigation. Counsel for the Settling Defendants shall instruct all experts disclosed on their behalf that they are not to otherwise participate in any way in this Litigation or in any related proceeding.
>
> If Plaintiffs elect to retain any experts previously retained by the Settling Defendants, Plaintiffs agree to bear all associated costs and fees that are incurred from the date of this Agreement and beyond.

*See id.*

On July 10, 2008, the Settling Defendants filed a notice of withdrawal of the designations of Drs. Verdeal and Hughes. *See* Withdrawal of Rule 26(a)(2) Expert Designations Dr. Kathey Verdeal and Dr. Richard Hughes by Defs. Gravity Play Entertainment, LLC; Cheyenne Mountain Resort, LLC; and BMC – The Benchmark Management Company d/b/a Benchmark Hospitality International [Docket No. 67]. On July 17, 2008, in response to this notice, TIS filed an objection to the withdrawal "only if it is determined by the Court that an effect of the withdrawal is to prohibit The Inflatable

Store from calling these experts to provide testimony and opinions at trial." *See* Def.'s Obj. to Co-Defs.' Withdrawal of Expert Designations of Dr. Kathey Verdeal and Dr. Richard Hughes [Docket No. 71] at 2.

Notwithstanding the controversy over these experts, TIS included Drs. Verdeal and Hughes on the list of witnesses it expects to call at trial. *See* Proposed Pretrial Order, Attachment 1 (Witness List) [Docket No. 70]. In response to that listing, plaintiffs filed the present motion seeking to preclude TIS from eliciting their testimony. *See* Pls.' Mot. at 5. TIS responded, *see* Def.'s Resp., and plaintiffs replied, *see* Pls.' Reply to Def.'s Resp. to Pls.' Mot. to Preclude Testimony [Docket No. 92] ("Pls.' Reply"). The motion is fully briefed and ripe for decision.

## II. ANALYSIS

### A. Rule 26

Plaintiffs argue that the withdrawal of Dr. Verdeal's and Dr. Hughes' expert designations has converted them from testifying experts to experts "not expected to be called as a witness" – so-called "consulting experts" – under Fed. R. Civ. P. 26(b)(4)(B). Plaintiffs therefore contend that Rule 26's strictures should govern the present motion and TIS should not be permitted to call the experts at trial. Rule 26 provides that, in order to get discovery of a consulting expert, a party must show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."[2] Fed. R. Civ. P. 26(b)(4)(B)(ii). Plaintiffs urge that

_____

[2] The rule also provides that discovery may be had "as provided in Rule 35(b)," which concerns physical and mental examinations. Fed. R. Civ. P. 26(b)(4)(B)(i). That provision is inapplicable to this case.

4

this "exceptional circumstances" test is the correct standard against which to evaluate their request to preclude. *See* Pls.' Reply at 7. TIS, on the other hand, argues that Rule 26 is a discovery rule and thus does not apply where discovery has already occurred and the experts' opinions have already been disclosed. *See* Def.'s Resp. at 8. I agree with TIS.

Rule 26 outlines general discovery provisions, and Rule 26(b)(4)(B), by its terms, governs only the discovery of non-testifying expert witnesses. Fed. R. Civ. P. 26(b)(4)(B) ("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."). Here, discovery is done. Drs. Verdeal and Hughes were disclosed, reports summarizing their opinions were produced, and Dr. Verdeal's deposition was taken. The issue is whether these experts, properly disclosed but subsequently withdrawn, will testify at trial. Rule 26 does not bear on that question. *See House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 249 (N.D. Iowa 1996) ("[D]esignation of an expert as likely to testify at trial, . . . even if that designation is subsequently withdrawn, removes the question of whether an opposing party should be able to depose and call the expert at trial from the 'exceptional circumstances' requirements of Fed. R. Civ. P. 26(b)(4)(B)."); *Agron v. Trustees of Columbia Univ.*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997) (finding Rule 26(b)(4)(B) inapplicable to plaintiff's motion to preclude defendant from calling plaintiff's withdrawn expert at trial; "[T]he

5

Rule governs limitations on *discovery*.  The instant dispute, however, does not concern discovery matters, but rather the trial testimony of [the expert].” (emphasis in original)).

The decisions cited by plaintiffs do not change my analysis.  Plaintiffs point to several cases in support of their argument that Rule 26’s “exceptional circumstances” standard should apply.  *See* Pls.’ Reply at 7-8 (citing *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023 (E.D. Cal. 2002); *Wolt v. Sherwood*, 828 F. Supp. 1562 (D. Utah 1993); *In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D. La. 1990)).  However, *In re Shell Oil* expressly addressed only the discovery of expert witness opinions – a situation where Rule 26(b)(4)(B) indisputably applies.  132 F.R.D. at 439 (“The court addresses here the plaintiffs’ request for discovery of the defendant’s experts.”).  *FMC* and *Wolt* also arise in the pre-trial context, but appear to be concerned with broader issues of access to experts, including the discovery of expert opinions.  *See FMC Corp.*, 196 F. Supp. 2d at 1041 (addressing defendants’ motion to prohibit third-party defendant from “deposing and calling as witnesses at trial” certain experts designated by plaintiff); *Wolt*, 828 F. Supp. at 1566 (addressing whether settlement agreement prohibiting expert witnesses from being “hired” by non-settling defendants is void as against public policy).  To the extent these cases bear on expert witness discovery, they are distinguishable from the present situation.  To the extent these cases suggest that Rule 26 governs the separate issue of expert trial testimony, however, I decline to follow them, as they are inconsistent with the plain language of Rule 26.

### B.  Rule 403

Instead of applying Rule 26's "exceptional circumstances" test, TIS argues that this Court should follow the decision in *House v. Combined Insurance Co. of America* and evaluate the admissibility of Dr. Verdeal's and Dr. Hughes' testimony under Federal Rule of Evidence 403's balancing of probative value against unfair prejudice.  *See* Def.'s Resp. at 9.  However, the *House* court was not faced with the situation, presented here, where an expert has been withdrawn pursuant to an express settlement agreement.  *See* 168 F.R.D. at 238-39.  As explained below, I find that the parties' settlement agreement is enforceable and precludes TIS from presenting the experts' testimony at trial.  This obviates the need to decide which standard is to be applied in the absence of a settlement agreement.

### C.  Settlement Agreement

The settlement agreement between plaintiffs and the Settling Defendants contemplates that Drs. Verdeal and Hughes will have no further role in this litigation. *See* Pls.' Mot. at 2.  Plaintiffs contend that this settlement agreement is proper, pointing to a line of cases enforcing these types of agreement on the grounds that they encourage the voluntary settlement of lawsuits.  Plaintiffs further argue that allowing non-settling parties to rely on settling parties' experts would condone "free-riding" and reward a party's lack of diligence.  In support, plaintiffs cite *In re Estate of Cody Alan Halama*, Nos. 3:06cv53, 2:06cv63, 2007 WL 2306947, *1 (D.N.D. Aug. 8, 2007) (noting that the non-settling party should not receive the benefit of the settling party's experts given his refusal to pay a portion of the experts' costs); *FMC Corp.*, 196 F. Supp. 2d at

1048 ("There is a strong public policy against permitting a non-diligent party from free-riding off the opponent's industry and diligence."); *Wolt*, 828 F. Supp. at 1568 ("To preclude a plaintiff from buying the expertise of a settling defendant could discourage the settlement process, and frustrate the public policy in favor of settlement."); and *Bd. of Educ. of McDowell County. v. Zando, Martin & Milstead, Inc.*, 390 S.E.2d 796, 812 (W. Va. 1990) (upholding trial court's exclusion of settling party's expert witnesses, whom non-settling party attempted to call at trial, on the ground that non-settling party "'could have prepared its own case rather than relying on [the settling party's] experts.' . . . To rely on another party defendant's witnesses without some formal agreement as to shared use is to invite the consequences that arose . . . in the present case." (quoting *Riggle v. Allied Chem. Corp.*, 378 S.E.2d 282, 290 (W. Va. 1989)).

TIS, on the other hand, points to cases disallowing such agreements on the theory that they amount to little more than contracts to suppress evidence, which violate public policy and offend the "fundamental principle that 'the public . . . has a right to every man's evidence.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)) (alteration in original). *See also Rocky Mountain Natural Gas Co. v. Cooper Indus., Inc.*, 166 F.R.D. 481, 483 (D. Colo. 1996) (permitting non-settling defendants to depose settling defendant's expert, who had become consulting expert for plaintiff, despite plaintiff's argument that it "paid a settlement premium for sole access to that information;" "Allowing a party to 'buy' the right to suppress information which would otherwise be discoverable . . . is contrary to the principles behind the discovery rules."); *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d

556, 559-60 (Tex. 1990) (permitting depositions of experts who were re-designated from testifying experts to consulting experts pursuant to a settlement agreement, even though consulting-expert privilege would normally shield experts from discovery, on the ground that the redesignation "was an offensive and unacceptable use of discovery mechanisms intended to defeat the salutary objectives of discovery"); *Williamson v. Superior Ct. of Los Angeles County*, 582 P.2d 126, 130-31 (Cal. 1978) (permitting plaintiff's discovery of expert witness who had been withdrawn by defendant in exchange for co-defendant's agreement to indemnify and construing such an agreement as an agreement to suppress evidence, which "have long been held void as against public policy").

TIS places particular reliance on *Rocky Mountain Natural Gas Co.*, a decision from this District. *See* Def.'s Resp. at 5-6. However, *Rocky Mountain* is distinguishable. In *Rocky Mountain*, defendants sought to depose certain experts who had originally been retained by a co-defendant but were later "transferred" to plaintiffs pursuant to the terms of a settlement agreement. *See* 166 F.R.D. at 481. These experts were designated consulting (non-testifying) witnesses and thus were subject to Rule 26(b)(4)(B). *See id.* at 482. Reasoning that Rule 26(b)(4)(B) exists to protect only facts and opinions a consulting expert developed while retained by an opposing party, the court ruled that the defendants could depose these experts on facts and opinions acquired prior to their retention by plaintiffs – i.e., while retained by co-defendants. *See id.* at 482-83. That issue – the scope of permissible discovery of consulting experts – is

markedly different from the issue at hand, which is whether TIS may elicit trial testimony from experts retained by other parties but withdrawn from the litigation.

In determining that plaintiffs' motion should be granted, I find persuasive the reasoning of the court in *West Virginia ex rel. Ward v. Hill*, 489 S.E.2d 24 (W. Va. 1997). In *Ward*, the three co-defendants disclosed various expert witnesses; there, as here, there was no agreement for jointly retaining or sharing the costs of the experts. *Id.* at 27-28. One of the defendants settled and, as part of that settlement, agreed to withdraw all of his expert witnesses. *Id.* Thereafter, another defendant sought to use the settling defendant's experts. *Id.* at 28. The trial court granted that request and allowed any of the non-settling defendants to "talk to and use at trial" such experts, despite the settlement agreement. *Id.* Reviewing that decision, the West Virginia Supreme Court recognized the same policies urged by the parties here:

> One policy is based on the principle that "'the public ... has a right to every man's evidence.'" *U.S. v. Bryan*, 339 U.S. 323, 331 (1950), quoting John H. Wigmore, Evidence § 2192 (3rd ed.). "[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth. (footnote omitted)." *U.S. v. Nixon*, 418 U.S. 683, 710 (1974).
>
> The other policy is the encouragement of settlement rather than litigation to resolve controversies by upholding contracts fairly made that do not contravene public policy. Indeed, "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Sanders v. Roselawn Memorial Gardens, Inc.*, 159 S.E.2d 784 (1968).

*Id.* at 31 (some citations omitted). In reconciling the tension between these policies, the court in *Ward* noted that the expert problem could have easily been avoided:

> [T]he dilemma between these competing policies was created by the
> remaining defendants who then sought rescue from the circuit court
> claiming a right to all available evidence. At this stage of discovery . . . ,
> the policies are in conflict. But, the dilemma could have been avoided by
> the remaining defendants. The remaining defendants had the same
> opportunity as the settling defendant to select their own expert witnesses
> and to identify those experts to the plaintiffs, or the defendants could have
> agreed to a formal arrangement to share expert witnesses. Neither was
> done in this case.

*Id.* The court went on to hold that the non-settling defendant could not take advantage

of the settling defendant's diligent trial preparation and, "absent a formal agreement

among defendants in a litigation proceeding involving multiple defendants, the circuit

court should not generally permit a settling defendant's expert witnesses to testify for

the remaining defendants." *Id.* at 31-32.

As in *Ward*, TIS's predicament is one of its own creation. TIS could have

designated experts on Ms. Giles' alcohol use or attempted to retain Drs. Verdeal and

Hughes jointly with the Settling Defendants,[3] but did not. TIS's decision not to retain its

own toxicology expert had certain advantages and disadvantages. The advantage was

that, if the other defendants did not settle, TIS would have the benefit of the experts'

testimony at trial without having to pay for it. The disadvantage was that, if the

defendants who retained the toxicology experts reached a settlement agreement with

the plaintiffs and withdrew those experts, TIS would be left without any experts on the

subject of the effects of Ms. Giles' alleged alcohol use. *See*, *e.g.*, *Zando, Martin &

Milstead, Inc.*, 390 S.E.2d at 812 ("To rely on another party defendant's witnesses

---

[3] TIS and the Settling Defendants apparently jointly retained at least one expert, Jim
Schraa. *See* Pls.' Mot., Attach. 1 (Aff. of Kristin R. Anderson), Ex. B. Counsel for the Settling
Defendants recognized that the settlement agreement with plaintiffs did not preclude Mr.
Schraa's continued work for TIS. *See id.*

without some formal agreement as to shared use is to invite the consequences that arose in . . . the present case.").  TIS rolled the dice and, not liking the result, now claims the game is unfair.  However, as explained below, the settlement agreement creates no injustice.

TIS claims that the settlement agreement is an agreement to suppress evidence. But the settlement agreement will not keep fact evidence from the jury since there is no suggestion that Drs. Verdeal or Hughes are fact witnesses or would do anything more than another toxicology expert, namely, review the medical evidence and facts of the accident and render an opinion.  TIS itself acknowledges that it would call Drs. Verdeal and Hughes only to present opinion testimony.  *See* Def.'s Resp. at 10 (requesting "an order that Inflatable Store may offer *the opinions* of Dr. Kathey Verdeal and Dr. Richard Hughes at trial") (emphasis added); *cf. In re John Richards Homes Bldg. Co.,* 439 F.3d 248, 264 (6th Cir. 2006) (noting that "expert testimony may not be used to establish underlying facts not otherwise in evidence" (citing *In re James Wilson Assocs.*, 965 F.2d 160, 172 (7th Cir. 1992))).  Were Drs. Verdeal and Hughes the only experts who could render opinions on the subjects of Ms. Giles' alcohol use and whether it contributed to her accident, there may be a more compelling argument that a settlement agreement precluding their testimony has the effect of suppressing relevant evidence. However, that is not the case.

Further, the agreement does not preclude all opinion evidence on the subject matter of Ms. Giles' alcohol use and the effect of that use on her accident; it only bars Drs. Verdeal and Hughes from providing that opinion evidence.  Thus, any

"suppression" of opinion evidence is as much a result of TIS's strategic decision not to retain its own experts as it is a result of the settlement agreement.

After the Settling Defendants filed their notice of withdrawal of the designations of Drs. Verdeal and Hughes, TIS, having miscalculated, was faced with two options. The first was to do what it did, and designate Drs. Verdeal and Hughes in derogation of the settlement agreement. The second option was to seek leave of court to designate a toxicology expert out of time. In other words, TIS had an option other than using other parties' experts but, for whatever reason, it did not file such a motion. Any conflict between the policies of encouraging settlement and discouraging free-riding (urged by plaintiffs) and the policy of promoting the public's right to "everyman's evidence" (urged by TIS) is a conflict of TIS's own making.

## III. CONCLUSION

Having taken a calculated risk to rely on other parties' experts, TIS cannot complain when those parties exercised control over their experts and removed them from the case. Allowing TIS to use the experts would reward TIS's strategic decision and unfairly deprive plaintiffs of their bargain with the Settling Defendants. Thus, the expert testimony of Drs. Verdeal and Hughes should be excluded. Nothing in this Order, however, precludes TIS from filing a motion seeking permission to endorse its own toxicology experts. The Court will deal with issues of untimeliness and prejudice if and when such motion is filed.

Therefore, it is

**ORDERED** that plaintiffs' motion to preclude the testimony of Drs. Kathey

Verdeal and Dr. Richard Hughes [Docket No. 90] is GRANTED.  TIS may not call or

otherwise present the opinions of Drs. Verdeal or Hughes at trial in this matter.


DATED March 24, 2009.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge